**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

|  |  |  |
|---|---|---|
| In re: | x : | Chapter 11 |
|  | : | Case Nos. 16-21311 (JAM) |
| HEBREW HEALTH CARE, INC., *et al*,[1] | : : | through 16-21314 (JAM) and 16-21334 (JAM) |
| Reorganized Debtors | : x | (Jointly Administered) |

**FINAL APPLICATION OF PULLMAN & COMLEY, LLC,**
**AS COUNSEL TO THE REORGANIZED DEBTORS,**
**FOR ALLOWANCE OF**
**COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Pullman & Comley, LLC ("P&C" or the "Applicant"), counsel to the Reorganized Debtors, Hebrew Health Care, Inc. ("HHCI") and Hebrew Life Choices, Inc. also known as Hoffman SummerWood Community ("HLCI"), Hebrew Community Services, Inc. ("HCSI"), Hebrew Home and Hospital, Incorporated ("HHHI"), CT Geriatrics Specialty Group, P.C. ("CGSG"), (collectively, the "Affiliates") and jointly with HHCI, the debtors and debtors in possession (the "Debtors") (collectively, the "Reorganized Debtors"), hereby submits this final application for allowance of counsel fees and reimbursement of expenses (the "Application").

By reason of this Final Fee Application, P&C seeks final approval of all interim compensation and disbursements previously approved and paid to P&C, plus final approval and payment of fees and expenses incurred from March 1, 2017 through August 18, 2017 (the "Final Interim Period").

---

[1] Hebrew Health Care, Inc., Case No. 16-21311, Hebrew Life Choices, Inc., Case No. 16-21312, Hebrew Community Services, Inc., Case No. 16-21213, Hebrew Home and Hospital, Incorporated, Case No. 16-21314, and CT Geriatric Specialty Group, P.C., Case No. 16-21334.

## BACKGROUND

1.   On August 15, 2016 (the "Filing Date"), the Reorganized Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Connecticut, Hartford Division. On August 19, 2016, CGSC filed a Voluntary Petition in this Court for relief under the Bankruptcy Code. The Reorganized Debtors continue to operate their businesses and manage their properties as a Reorganized Debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.   On August 18, 2016, an Order Authorizing the Joint Administration of the Reorganized Debtors' cases was entered. On August 25, 2016, an Order Authorizing the Joint Administration of CGSG with the other Reorganized Debtors' cases was granted by the Court. The Reorganized Debtors continue to operate their businesses and manage their properties as Reorganized Debtors and Reorganized Debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3.   On August 30, 2016, an Official Committee of Unsecured Creditors was appointed in these cases (the "Committee").

4.   HHCI is the parent company of HLCI, HCSI and HHHI and is located at One Abrahms Boulevard, West Hartford, Connecticut 06117. HHCI provides management, human resources and payroll services to its three subsidiaries.

5.   HLCI is a Connecticut corporation that is engaged in the business of operating an assisted living facility and providing rehabilitation services. The facility is located at 160 Simsbury Road, West Hartford, Connecticut 06117.

6. HCSI is a Connecticut corporation that is engaged in the business of providing assisted living services, and senior day care services. The facility is located at One Abrahms Boulevard, West Hartford, Connecticut 06117.

7. HHHI is a Connecticut corporation that is engaged in the business of operating a 45 bed nursing hospital comprising of a 23 bed medical unit, a 22 bed behavioral health unit. It previously operated the skilled nursing home business (the "SNF Business") which was sold. The facility also provides rehabilitation services and is located at One Abrahms Boulevard, West Hartford, Connecticut 06117, which property HHHI owns (the "HHHI Property").

8. CGSG is a Connecticut corporation that is engaged in the business of operating an assisted living facility and providing rehabilitation services.

9. All of the Reorganized Debtors operate as not-for-profit organizations.

10. HHHI began operations in 1892 when 124 orthodox Jewish women in Hartford formed the Hebrew Ladies Sick Benefit Association. The women agreed to contribute a nickel per week for the proposed home, and they resolved to go out and collect a nickel per week from others in the community. These volunteer collectors were known as the "Handkerchief Brigade" because they collected their nickels in large handkerchiefs. On October 14, 1909, the first Hebrew Old People's Home in Connecticut opened on Wooster Street in Hartford, Connecticut with four residents. When the home on Wooster Street could not accommodate more people, the Hogle Mansion at 276 Washington Street was purchased on April 3, 1919. In 1925, a three-story annex was added to provide space for sixty-five residents. In 1954, a new facility housing 200 residents was opened on Tower Avenue in Hartford, where it continued its operations until its moved in 1989, to its current location, on Abrahms Boulevard, where it currently serves approximately 250 residents and patients.

3

11. By order dated December 16, 2016, the Court approved P&C's first interim application for compensation for services rendered in the amount of $232,400.90 and reimbursement of expenses in the amount of $18,474.03 for services performed from August 15, 2016 through October 31, 2016. By order dated April 19, 2017, the Court awarded P&C its second interim allowance of compensation in the amount of $185,867.50 and reimbursement of expenses in the amount of $914.90 for services performed from November 1, 2016 through and to February 28, 2017. The applications summarized in this paragraph shall be collectively referred to as the "Interim Fee Applications."

## STATUS OF THE CASE

12. On June 29, 2017, this Court entered an Order approving the Third Amended Disclosure Statement (the "Disclosure Statement").

13. On July 21, 2017, this Court entered an Order (the "Confirmation Order") confirming the Fourth Amended Plan of Reorganization, as modified before confirmation on July 18, 2017 (the 'Plan").

14. As of August 14, 2017, all conditions to the Plan taking effect was satisfied in accordance with applicable plan provisions. Pursuant to the Plan and Confirmation Order, August 14, 2017 was designated as the Effective Date of the Plan.

15. On August 14, 2017, the Reorganized Debtors filed a Notice of: (a) Effective Date of Fourth Amended Plan of Reorganization as Modified and (b) Deadline for Filing Professional Fee Applications.

## DESCRIPTION OF SERVICES

16. All of the professional services for which this award is being sought hereby were rendered solely on behalf of the Reorganized Debtors in connection with the Chapter 11

proceedings herein and in fulfillment of the responsibility of Applicant as counsel to the Reorganized Debtors. The services performed by P&C can be classified into the following project categories: (i) Case Administration; (ii) Cash Collateral; (iii) Fee and Retention Applications; (iv) Plan and Disclosure Statement; and (v) Claims Administration.

## Case Administration

17. The time spent in this category relates to a broad range of essential activities, including administrating, reviewing, analyzing and summarizing pleadings, motions and other documents filed with the Court; evaluating operational issues; and reviewing and editing Schedules and Statements of Financial Affairs and creditor lists and addressing related administrative matters.

18. In the Application Period, P&C was called upon to interact with, among others, numerous vendors, suppliers, governmental authorities, employees and union representatives. P&C investigated such inquiries, and responded in an appropriate manner. Through P&C's efforts, the Reorganized Debtors continued to conduct their business with their vendors, and were able to provide the needed and necessary services to residents without any diminution in value.

19. P&C performed services on behalf of the Reorganized Debtors in the Application Period to ensure that the Reorganized Debtors could continue to function efficiently, and stay on track for an effective and efficient reorganization of the Reorganized Debtors' businesses. In particular, P&C monitored the official Docket for these cases, regularly communicated with the Court regarding scheduling and related matters, drafted pleadings in connection with the scheduling of expedited hearings, and coordinated with the Reorganized Debtors' other professionals on matters to prevent duplication of services.

20. Further, since the Reorganized Debtors' bankruptcy filing, P&C has advised and assisted the Reorganized Debtors in addressing legal, financial and operational issues in their path towards reorganization, permitting the Reorganized Debtors to continue their businesses and comply with the rules and regulations of the Court, as well as applicable governmental laws and regulations including, but not limited to, the bankruptcy aspects and ramification of specific regulatory issues relating to the healthcare industry, Medicare and Medicaid.  P&C has also advised and assisted the Reorganized Debtors in all aspects of their business operations, and the resulting legal issues that arise.

21. P&C performed various miscellaneous tasks in this project category in the Application Period.  For example, P&C worked with the Reorganized Debtor to update and amend the Schedules and review and analyze claims.  For those claims that were determined to be disallowable, P&C prepared and filed claims objections and attended the hearings with respect to same.

22. Once the Plan was effective, P&C consulted with the Office of the United States Trustee and counsel for the Ombudsman regarding a motion discharging the Ombudsman for the purposes of relieving the Ombudsman from any further responsibilities as an officer of the Court with respect to the cases.  Following such consultation, P&C prepared and filed a Motion for Entry of Order discharging the duties of the Patient Care Ombudsman.

23. P&C continued to evaluate contracts, engaged in communications with the Reorganized Debtors about which contracts the Reorganized Debtors desired to assume or reject, and revised charts to reflect same.

24. The following is a statement of the number of hours spent, and the amount of compensation requested for each professional who worked on this project during the Final Interim Period:

| **Professional** | **Number of Hours** | **Compensation Requested** |
|---|---|---|
| Elizabeth J. Austin (Partner) | 20.30 | $10,353.00 |
| Jessica Grossarth Kennedy (Partner) | 23.80 | 9,163.00 |
| Irve J. Goldman (Partner) | 1.20 | 612.00 |
| **Total** | | **$20,128.00** |

**Cash Collateral/Funding**

25. P&C's services in this project category included two subcategories, including work related to the Reorganized Debtors' use of cash collateral and the work related to Debtor-In-Possession financing ("DIP"). With regard to the use of cash collateral, the Reorganized Debtors analyzed budgets and engaged in communications with interested parties regarding the budgets. During the Application Period, a total of two cash collateral orders were negotiated and entered by the Court.

26. The Applicant's services related to use of cash collateral included communicating with the lender's counsel about the terms and the cash collateral budgets, negotiating orders for the continued use of cash collateral, and communicating with the Committee's counsel, TD Bank's counsel and HUD regarding all aspects of same.

27. The following is a statement of the number of hours spent and the amount of compensation requested for each professional who worked on this project during the Final Interim Period:

7

| Professional | Number of Hours | Compensation Requested |
|---|---|---|
| Elizabeth Austin (Partner) | 6.20 | $3,162.00 |
| Total | | $3,162.00 |

### C. Fee and Employment Applications

28. The services performed by P&C in this project category included preparing the Second and Final Fee Applications. P&C also communicated with the professionals in the case about timing and procedure for filing second interim and final fee applications, conferred with the professionals regarding their fee applications and drafted revisions to same, prepared and edited P&C's second interim fee application with all related pleadings, engaged in discussions with Marcum, LLP related to its retention as auditors, worked with Marcum's counsel regarding the UST's objection to Marcum's retention, and P&C attended hearings on the applications.

29. The following is a statement of the hours spent and the amount of compensation requested for each professional who worked on this project during the Final Interim Period:

| Professional | Number of Hours | Compensation Requested |
|---|---|---|
| Elizabeth J. Austin (Partner) | 3.20 | $1,632.00 |
| Jessica Grossarth Kennedy (Partner) | 17.00 | $6,545.00 |
| Total: | | $8,177.00 |

### D. Plan and Disclosure Statement

30. In the Application Period, P&C performed services related to revising and modifying the Plan and Disclosure Statement, approval of the Disclosure Statement and confirming the Plan, as follows. P&C engaged in extensive negotiations while at the Reorganized Debtors' financial advisor with the Committee regarding the treatment of unsecured

8

claims in the Plan, security for same and related matters, with the Department of Revenue Services ("DRS") regarding the compromise of the DRS claim and the payment plan for its allowed claim, with TD Bank regarding the refinancing of its secured debt against HLCI and with 503(b)(9) claimants regarding the treatment of their claims in the Plan. P&C also participated in numerous telephone calls with the PBGC to give the PBGC updates and worked with the PBGC regarding the treatment of the single employer pension in the Plan. P&C incorporated the revisions and comments proposed by various creditor constituencies in order to address and resolve objections in the Plan and Disclosure Statement, attended several hearings on the Disclosure Statement and ultimately obtained approval of the Disclosure Statement. P&C prepared for, attended the confirmation hearing and confirmed the Plan.

31. When the Plan became effective on August 14, 2017, P&C prepared and filed a Notice of Effective Date of Fourth Amended Plan of Reorganization as modified and (b) Deadline for Filing of Professional Fee Applications.

32. The following is a statement of the hours spent and the amount of compensation requested for each professional who worked on this project during the Final Interim Period:

| **Professional** | **Number of Hours** | **Compensation Requested** |
|---|---|---|
| Elizabeth J. Austin (Partner) | 158.30 | $80,733.00 |
| Jessica Grossarth Kennedy (Partner) | 25.80 | $9,933.00 |
| George Kasper (Partner) | 10.80 | $5,130.00 |
| H. William Shure (Partner) | 2.50 | $1,250.00 |
| Karen A. Jeffers (Partner) | 1.50 | $675.00 |

| | | |
|---|---|---|
| Stephen M. Cowherd (Partner) | .40 | $166.00 |
| Russell F. Anderson (Partner) | .8 | $248.00 |
| | **Total Requested:** | **$98,135.00** |

### E. Claims Administration

33. In this project category, the Applicant began the claims reconciliation process, to including performing services to reconcile the general unsecured claims, the secured claims and the priority claims, including reviewing the claims chart (the "Chart") prepared by Rust Omni; suggesting revisions to the Chart; reconciling claims and noting such on the Chart; drafting revisions to the Chart based on the reconciliation results; drafting of first omnibus objection to claims, attending hearings with respect to same, and engaging in discussions with the Reorganized Debtors to reconcile certain claims.

34. The following is a statement of the hours spent and the amount of compensation requested for each professional who worked on this project during the Final Interim Period:

| **Professional** | **Number of Hours** | **Compensation Requested** |
|---|---|---|
| Elizabeth J. Austin (Partner) | 5.2 | $2,652.00 |
| Jessica Grossarth Kennedy (Partner) | 73.50 | $28,297.50 |
| Mary Dean (Paralegal) | 10.90 | $2,670.50 |
| | **Total Requested:** | **$33,620.00** |

### THE FEES AND EXPENSES REQUESTED

35. Annexed hereto and made a part hereof as Exhibit "A" is a listing for the Final Interim Period setting forth the name of each attorney and paralegal who rendered services to the

Reorganized Debtors, the number of hours of service such person rendered, such person's hourly billing rate(s) and the fee for such person's services. Annexed hereto and made a part hereof as Exhibit "B" are detailed time sheets upon which this fee application is based. Each such time sheet contains a summary of each individual professional's time for the Application Period, itemizing the dates upon which services were rendered, including a summary of the services on each of such dates by each person rendering the service, the time spent in rendering such service, and the dollar value of such services. Annexed hereto as Exhibit "C" is the back-up documentation to support the costs sought by this Application.

(a) The services and expenses for which allowance is sought for the Final Interim Period hereby total $163,222.00 and $779.52, respectively. P&C has complied with Fed. R. Bankr. P. 2016(a) in the keeping of its time records and its Rule 2016 Affirmation is annexed hereto.

36. The legal services for which such compensation is requested were performed for and on behalf of the Reorganized Debtors. Such services have been necessary to protect and enforce the rights and interests of the Reorganized Debtors in connection with the Chapter 11 proceeding. The reasonable value of services rendered by P&C as counsel to the Reorganized Debtors in these proceedings is based upon the Applicant's usual hourly rates for matters of this nature.

**WHEREFORE**, P&C respectfully requests (i) final allowance compensation for all professional services rendered, including all amounts previously allowed on an interim basis and reimbursement of actual and necessary disbursements including those previously allowed on an interim basis; (ii) final allowance and payment of the amounts requested for the Final Interim Period and (iii) such other and further relief as the Court deems to be just and equitable.

Dated this 28th day of August, 2017 at Bridgeport, Connecticut.

        Respectfully submitted,
        Pullman & Comley, LLC
        *Counsel to the Reorganized Debtors*

        By: /s/ Elizabeth J. Austin
            Elizabeth J. Austin (ct04383)
            Pullman & Comley, LLC
            850 Main Street, P.O. Box 7006
            Bridgeport, CT 06601-7006
            Telephone: (203) 330-2000
            Facsimile: (203) 576-8888
            eaustin@pullcom.com